UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK COVERT,<br><br>         Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO; OFFICER C. BERNARD; OFFICER CRAWFORD,<br><br>         Defendants. | Case No.: 15cv2097 AJB (WVG)<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS;**<br>**(Doc. No. 45)**<br><br>**(2) GRANTING DEFENDANTS' UNOPPOSED MOTION TO FILE DOCUMENTS UNDER SEAL; AND**<br>**(Doc. No. 46)**<br><br>**(3) GRANTING DEFENDANT CITY OF SAN DIEGO'S REQUEST TO BE DISMISSED WITH PREJUDICE**<br>**(Doc. No. 51)** |

  Presently before the Court are several motions brought by Defendants City of San Diego, Officer C. Bernard, and Officer Crawford. (Doc. Nos. 45, 46, 51.) Pursuant to Local Rule 7.1.d.1, the Court found these motions suitable for determination on the papers. Accordingly, the hearing date set for March 2, 2017, was vacated. With the issuance of this

1

order, the Court **GRANTS IN PART AND DENIES IN PART** Defendants Bernard and Crawford's motion to dismiss, (Doc. No. 45), **GRANTS** Defendants Bernard and Crawford's unopposed motion to file documents under seal, (Doc. No. 46), and **GRANTS** Defendant City of San Diego's motion to request to be **DISMISSED** from this matter **WITH PREJUDICE**. (Doc. No. 51.)

## I.  FACTS ALLEGED IN THE FAC[1]

Plaintiff Mark Covert ("Plaintiff") is a fifty-seven year old retired Navy Seal. (Doc. No. 41 ¶ 8.) Due to a training accident while in the Navy, Plaintiff suffers from severe depression, and Post Traumatic Stress Disorder ("PTSD"). (*Id.*) Plaintiff also suffers from skin cancer and herniated disks in his back. (*Id.*) On information and belief, Plaintiff alleges that Defendant Christopher Bernard and Defendant Brett Crawford (collectively referred to as "Defendants") are employed by the city of San Diego, and in doing the acts alleged, acted within the course and scope of their employment. (*Id.* ¶¶ 4-6.)

On March 1, 2015, Plaintiff went to the Veterans Affairs Hospital ("V.A. Hospital") in La Jolla, California, because he was feeling depressed. (*Id.* ¶ 10.) Plaintiff was then treated and sent home. (*Id.*) The next day, Plaintiff went back to the V.A. Hospital for a scheduled treatment for his skin cancer. (*Id.* ¶ 11.) Due to the length of time and pain involved in the procedure, Plaintiff asked to reschedule the appointment. (*Id.*) Plaintiff then returned home. (*Id.*)

Shortly after Plaintiff left, Dawn Miller at the V.A. Hospital contacted the police and requested a welfare check on Plaintiff. (*Id.* ¶ 12.) On the same day, Defendants arrived at Plaintiff's home. (*Id.* ¶ 13.) As Plaintiff was napping at the time, one of Plaintiff's daughters let Defendants in. (*Id.*)

After entering, Defendants and Plaintiff conversed about Plaintiff's health and family life. (*Id.* ¶ 15.) During the conversation, Plaintiff alleges that he was generally calm

---

[1] The following facts are taken from the FAC and construed as true for the limited purpose of resolving the instant motion. *See Brown v. Elec. Arts, Inc.,* 724 F.3d 1235, 1247 (9th Cir. 2013).

and polite with Defendants, though he did become agitated at times. (*Id.*) At the end of their discussion, Defendants told Plaintiff that they wanted to take him to be examined by a doctor. (*Id.* ¶ 16.) Plaintiff agreed to go with Defendants, however, before leaving he wished to call someone to pick up his son at school. (*Id.* ¶ 17.) Defendants however refused to let Plaintiff call anyone and said that they would send a police car to pick up his son. (*Id.*) Not wanting his son to be scared or embarrassed by a police car picking him up, Plaintiff told Defendants that if he would not be allowed to call someone about his son that he would not go with them. (*Id.*)

Plaintiff contends that Defendants then grabbed him and threw him on the floor, causing him to hit his head on the edge of a coffee table as he fell. (*Id.* ¶ 18.) This resulted in a gash to Plaintiff's head. (*Id.*) Plaintiff also alleges that while he was on the floor, one of the Defendants put his foot or knee on Plaintiff's back where he had recently had an epidural treatment. (*Id.* ¶ 19.) Though Plaintiff cried out in pain, the Defendant did not lift his foot or knee from Plaintiff's back.[2] (*Id.*) During this altercation, Plaintiff also alleges that Defendant Bernard tased Plaintiff for thirteen continuous seconds without releasing the trigger, when a standard tase cycle lasts only up to five seconds. (*Id.* ¶ 22.)

The confrontation described above was not caught on Defendants' body worn camera videos ("BWCV") as Plaintiff argues that Defendants intentionally turned off their body worn cameras. (*Id.* ¶ 20.) Thus, it was while the BWCV were turned off that Plaintiff contends the alleged excessive force occurred. (*Id.*)

After Plaintiff was subdued, additional officers arrived on the scene. (*Id.* ¶ 23.) Paramedics then took Plaintiff out of his home on a gurney with four-point restrains on. (*Id.*) At the same time, a senior officer on the scene reminded Defendants that their BWCV should be turned on. (*Id.*)

Plaintiff was taken to University of California San Diego Medical Center, where he

---

[2] The Court notes that Plaintiff does not specify which of the Defendants allegedly placed their knee on his back. (*See generally* Doc. No. 41 ¶¶ 18-20.)

was held until around 11:00 PM. (*Id.* ¶ 24.) While at the hospital, doctors ordered X-Rays of Plaintiff's torso and found that he had two broken ribs. (*Id.*) Plaintiff was then released later that night. (*Id.* ¶ 25.) On March 4, 2015, Plaintiff went to the emergency room at the V.A. Hospital and obtained another X-Ray that confirmed that Plaintiff's pain was from two broken ribs. (*Id.* ¶ 26.)

Plaintiff instituted this action on September 20, 2015. (Doc. No. 1.) The Court then granted and denied several joint motions to extend discovery deadlines, and motions to continue the mandatory settlement conference. (*See* Doc. Nos. 14, 17, 18, 20.) On October 26, 2016, the City of San Diego and Defendants filed a motion for judgment on the pleadings, (Doc. No. 21), which was denied as moot as the Court granted Plaintiff's motion for leave to amend. (Doc. No. 36.) On December 20, 2016, Plaintiff filed his FAC. (Doc. No. 41.) On January 3, 2017, Defendants filed the present motions, their motion to dismiss and motion to file documents under seal. (Doc. Nos. 45, 46.) On the same day, Defendant City of San Diego filed a motion to request to be dismissed from the present lawsuit with prejudice. (Doc. No. 51.)

## II.     LEGAL STANDARD

### A.     Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal. Inc.,* 88 F.3d 780, 783 (9th Cir. 1996) (citations omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true, and drawing all

reasonable inferences in favor of the nonmoving party. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.,* 497 F.3d 972, 975 (9th Cir. 2007).

Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 556 U.S. at 679.

### B.    Motions to Seal

Courts have historically recognized a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). In order to overcome this strong presumption, a party seeking to seal a judicial record must articulate justifications for sealing that outweigh the public policies favoring disclosure. *See Kamakana*, 447 F.3d at 1178–79. In turn, the court must "conscientiously balance[] the competing interests of the public and the party who seeks to keep certain judicial records secret." *Id.* at 1179 (quoting *Foltz*, 331 F.3d at 1135) (internal quotation marks omitted).

"After considering these interests, if the court decides to seal certain judicial records, it must 'base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture.'" *Id.* (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)). However, where the material is, at most, "tangentially related" to the merits of the case, the request to seal may be granted on a showing of "good cause." *Ctr. For Auto Safety v. Chrysler Grp., LLC.*, 809 F.3d 1092, 1097 (9th Cir. 2016). ///

### III. DISCUSSION

#### A. Defendant City of San Diego's Motion to be Dismissed with Prejudice

In the interests of judicial economy, the Court will turn to Defendant City of San Diego's assertion that it should be dismissed from this matter with prejudice as Plaintiff's FAC has removed all claims and causes of action against it. (Doc. No. 51-1 at 2-3.) Plaintiff does not oppose the City's motion, but only requests that the City be dismissed without prejudice. (Doc. No. 54 at 1-2.)

The Court first notes that it finds unpersuasive Plaintiff's contentions that it is ruling on a voluntary dismissal under Federal Rule of Civil Procedure ("FRCP") 41, where the City must demonstrate "plain prejudice" to be dismissed with prejudice. (*Id.* at 1.) As its title states, "Dismissal of Actions" suggests FRCP 41 "governs dismissals of *entire actions*, not of individual claims." *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 687 (9th Cir. 2005). In fact, nothing in case law suggests that "Rule 41(a) extends to the voluntary withdrawal of individual claims against a defendant remaining in the case." *Id.* Additionally, FRCP 41(a) applies to voluntary dismissals submitted by plaintiffs. However, the Court finds that Plaintiff did not file a motion for voluntary dismissal pursuant to FRCP 41(a)(2) in the instant action. Instead, the instant motion for dismissal was filed by Defendant City of San Diego. (Doc. No. 51.) Accordingly, Plaintiff's arguments under FRCP 41(a) are inapplicable.

Next, the Court highlights that it cannot be reasonably disputed that Plaintiff has dropped any and all claims against the City in his FAC. Consequently, the City argues that it would be prejudiced by Plaintiff if he decides to pick up his claims at the time of trial, or in another lawsuit. (Doc. No. 56 at 2.) The Court agrees with the City. This case has been going on for over a year, and Plaintiff has already been granted an extension for discovery. (Doc. No. 14.) Thus, the Court is unclear as to what other claims Plaintiff may bring up at a later date. Furthermore, leaving the City in a state of limbo in this litigation would also be prejudicial. *See Cano v. Glover*, 143 Cal. App. 4th 326, 330 (2006). Accordingly, the Court **GRANTS** the City's request to be dismissed from this case **WITH PREJUDICE**.

*See id.* ("The failure to amend and state a cause of action against defendant is an admission that plaintiff has stated the case as strongly as he can and there are no facts that could be alleged to cure the defect.") (citation omitted).

### B. Motion to Seal

Here, Defendants assert that good cause and compelling reasons exist to seal portions of their memorandum of points and authorities submitted in support of their motion to dismiss, and Exhibits 2-32 attached to the pleadings. (Doc. No. 46-2.) Plaintiff does not oppose this motion.

The Court agrees with Defendants and finds that despite the generally recognized right to inspect records and documents in this country, Defendants have overcome this strong presumption of access. *See Nixon*, 435 U.S. at 597 & n.7. Here, the documents and exhibits Defendants wish to seal include information such as Plaintiff's social security and driver's license number. Additionally, they also concern extremely personal and potentially detrimental information regarding Plaintiff, his family, allegations of domestic violence, and information about Plaintiff's mental health. Furthermore, the documents to be sealed also contain confidential information regarding Defendants and their identities. Accordingly, the Court finds that release of this information to the public could potentially embarrass or injure Plaintiff, his family, and Defendants. *See Seals v. Mitchell*, No. CV 04-3764 NJV, 2011 WL 1233650, at *2–5 (N.D. Cal. Mar. 30, 2011). Thus, balancing the need for the public's access to information and Plaintiff's interest in keeping his mental health and personal family matters private, weighs strongly in favor of sealing. Accordingly, Defendants' motion to seal is **GRANTED**.

### C. Judicial Notice

Next, Defendants ask the Court to take judicial notice of a case decided by the Supreme Court of the United States, *White v. Pauly*, 137 S. Ct. 548 (2017), and three assertions made by Plaintiff in his "Response to Defendant City of San Diego's Requests

for Admissions."[3] (Doc. Nos. 45-1, 55-1.)

Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b)(1)–(2); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

The Court finds both the Supreme Court case and the request for admission to be appropriate for judicial notice. As to the case, the Court finds that it can be accurately determined from different public sources. S*ee MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (noting a district court may take "judicial notice of matters of public record outside the pleadings" when determining whether a complaint fails to state a claim). In respect to the request for admission, the Court concludes that it is a document produced and relied on by the Court. *See Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015) ("It is well established that a court may take judicial notice of its own files and records . . ."). As a result, the Court **GRANTS** Defendants' two requests for judicial notice.

D.    Defendants' Objections

Attached to Defendants' Reply brief are objections that argue that Plaintiff's Opposition relies on inadmissible, disputed hearsay allegations that are not pled in the FAC. (Doc. No. 55-3.) After a careful review of Plaintiff's amended complaint in conjunction with the ten listed objections, the Court agrees with Defendants.

Currently, Plaintiff uses his Opposition as a vehicle to improperly inject new allegations and facts into the FAC regarding police procedures, Taser logs, and Defendants' awareness of police Taser guidelines. The Court reiterates that it is

---

[3] The three assertions are: (1) Plaintiff admits that Defendants had probable cause to detain him on a 5150 mental hold; (2) Plaintiff does not contend that the police officers did not have probable cause to execute a 5150 hold; and (3) Plaintiff admits that Defendants provided him a verbal warning prior to any Taser being deployed. (Doc. No. 45-1 at 2-3.)

inappropriate for the Court to assume that Plaintiff can prove facts which he has not alleged in his operative complaint. *See Assoc. Gen. Contractors of Cal.*, 459 U.S. at 526. Accordingly, the Court **GRANTS** Defendants' objections in whole and will not consider the ten allegations in coming to its holding in the present matter.[4]

### E. The Body Worn Camera Videos Can be Considered

Next, the Court addresses Defendants' request that the Court consider the BWCV and its transcripts. (Doc. No. 45 at 2.) In support of this request, Defendants argue that Plaintiff's FAC necessarily relies upon the BWCV, reference is made to the BWCV in the FAC, and that the BWCV footage are essential to fully understanding the events underlying Plaintiff's allegations and claims. (Doc. No. 45 at 2-3.) In direct contrast, Plaintiff contends that since the alleged use of excessive force occurred during the gap in the footage, that the BWCV are not relevant to the instant action. (Doc. No. 53 at 7.) In addition, Plaintiff asserts that judicial notice of the BWCV would unfairly prejudice Plaintiff as it would imply that all of the actionable conduct was captured on the video, which it was not. (*Id.*)

Generally, material beyond the pleadings may not be considered in deciding a motion to dismiss. However, a court may look to matters of public record, or to documents on which the complaint necessarily relies, if their authenticity is not contested. *See Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013). Here, though Plaintiff argues that the alleged excessive force happened during a time that was not caught on the BWCV, the Court still finds that the BWCV reveals the circumstances surrounding Plaintiff's claims. Moreover, Plaintiff does not contest the authenticity of the video; Plaintiff only argues that the BWCV were turned off, but does not assert that the video prior to the gap has been altered or tainted in anyway. *See Lee v. City of Los Angeles*, 250 F.3d 668, 687 (2001).

---

[4] The Court afforded Plaintiff leave to amend his claims on December 6, 2016, in spite of Defendants' strong opposition, and the fact that the discovery deadline for amendment had passed. (*See generally* Doc. No. 36.) Accordingly, the Court is puzzled that despite this chance to amend, Plaintiff has still failed to successfully plead all of his claims and facts in the FAC and has resorted to trying to introduce additional alleged facts in his Reply brief. It is advised that Plaintiff review the Federal Rules of Civil Procedure before proceeding with any future motions and responses before this Court.

Accordingly, the Court will consider the BWCV and transcript as they are incorporated into the FAC by reference and are documents that partially form the basis of Plaintiff's complaint. *See Greer v. City of Hayward*, No. 3:15-cv-02307-WHO, 2017 WL 168468, at *1 n.3 (N.D. Cal. Jan. 17, 2017). However, the Court remains cognizant of Plaintiff's assertion that the allegations of excessive force happened at a time when the BWCV were turned off.

### F.   Defendants' Motion to Dismiss

As a procedural matter, before analyzing the present motion, the Court will address Defendants' arguments that Plaintiff makes no individualized conduct attributable to Defendant Crawford in the FAC. (Doc. No. 55 at 6.) Thus, Defendants assert that Defendant Crawford should be dismissed from this action.[5] (*Id*.)

The Court disagrees. Though Defendant Crawford is not specifically mentioned by name throughout Plaintiff's FAC, the FAC alleges that both Defendants Crawford and Bernard used an unreasonable amount of force when they grabbed Plaintiff, threw him down to the floor, and allegedly turned off their BWCV. (Doc. No. 41 ¶¶ 18, 20.) The Court finds these allegations to be specific enough to put Defendant Crawford on notice of the wrong he allegedly committed so that he can adequately defend himself. *See* Fed. R. Civ. P. 8.

The Court now turns to the instant motion. Defendants argue that Plaintiff's FAC should be dismissed as it has failed to state a claim, and that Defendants are subject to qualified immunity. (Doc. No. 45 at 2.) In opposition, Plaintiff argues that Defendants are not entitled to qualified immunity as they clearly violated federal law by using excessive force against Plaintiff. (Doc. No. 53 at 8-9.)

#### 1.   Defendants' Use of Excessive Force Against Plaintiff

All claims of excessive force, either deadly or non-deadly, by law enforcement

---

[5] This argument was first brought up in Defendants' Reply brief. (Doc. No. 55 at 6.) Thus, Plaintiff was not given a chance to respond.

officers, in the course of an arrest, investigatory stop, or other seizure of a citizen are to be analyzed under the Fourth Amendment and its standard objective of reasonableness. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). The pertinent question in an excessive force case is whether the use of force was "objectively reasonable in light of the facts and circumstances confronting [the officers]." *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) (citation omitted). Overall, the reasonableness inquiry includes: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight (the "Graham factors"). *Graham*, 490 U.S. at 396.

Defendants argue that Plaintiff fails to recognize that the BWCV shows that he was agitated, refused Defendants' commands to go with them, was angry and combative, and also that one of his daughters accused Plaintiff of violent behavior. (Doc. No. 55 at 4.) Thus, Defendants allege that the use of the Taser was reasonable. (*Id.*) In opposition, Plaintiff asserts that the use of a Taser on an individual who has committed no crime, posed no threat to Defendants, and was not a flight risk is clearly unreasonable. (Doc. No. 53 at 10.)

First the Court notes that this circuit as well as our sister circuits agree that the use of a Taser constitutes an "intermediate, significant level of force that must be justified by the governmental interest involved."[6] *Bryan v. MacPherson*, 630 F.3d 805, 810 (9th Cir. 2010). Next, drawing all reasonable inferences in favor of Plaintiff, the non-moving party, and viewing the scene objectively under the *Graham* factors, the Court concludes that Plaintiff has pled enough facts to state a claim for excessive force.

Here, Plaintiff was not suspected of having committed any crime. Instead,

---

[6] *Oliver v. Fiorino*, 586 F.3d 898, 903 (11th Cir. 2009) (recognizing that a Taser is "designed to cause significant, uncontrollable muscle contractions"); *Orem v. Rephann*, 523 F.3d 442, 447–48 (4th Cir. 2008) *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (rejecting the contention that a Taser constitutes a minor or *de minimus* level of force); *DeSalvo v. City of Collinsville*, No. 04-CV-0718-MJR, 2005 WL 2487829, at *4 (S.D. Ill. Oct. 7, 2015).

Defendants were asked to do a "welfare check" on Plaintiff at his home. (Doc. No. 41 at 3.) Accordingly, there was no crime at issue and the overall sense of danger in approaching Plaintiff's home was low.

Next, under the second *Graham* factor, per the BWCV and transcript provided by Defendants, Plaintiff never issued any threats to Defendants either physically or verbally prior to being detained, tased, and brought to the ground. (*See Generally* Exs. 18-32, Doc. No. 47.) Moreover, when Defendants arrived at Plaintiff's home, they were informed by his daughter Kim that he did not have any guns in the house. (Ex. 18 at 5:9-15, Doc. No. 47-3.)[7] Furthermore, after an analysis of the BWCV, Plaintiff was seated and a safe distance away from Defendants before the altercation began. While the Court concedes that Defendants may have been worried about Plaintiff's safety to himself, and the safety of his daughters, the Court has difficulty seeing how Plaintiff, a fifty-seven year old male with skin cancer and herniated disks in his back, who simply refused to leave his home to return to the V.A. Hospital, posed an "immediate" threat to Defendants.[8] *See Chew*, 27 F.3d at 1441 (holding that whether the plaintiff posed an immediate threat to the safety of the officers or others is the most important factor).

As to the last *Graham* factor, the Court finds that Plaintiff did not actively resist arrest or attempt to evade arrest by flight. Again, the Court highlights the unique situation of Plaintiff's complaint. Defendants did not arrive at Plaintiff's home pursuing Plaintiff because he had committed a crime. Nor were Defendants in Plaintiff's home to arrest him. Here, Defendants were at Plaintiff's home to check on his well-being. Subsequently, when Defendants demanded that Plaintiff return to the V.A. Hospital, Plaintiff simply refused to go, and asked Defendants to leave his home. It wasn't until Defendants physically grabbed Plaintiff and brought him down to the ground with such force as to break two of his ribs

---

[7] Pinpoint cites are in reference to the CM/ECF page numbers and not the numbers listed on the document.

[8] The Court notes that Defendants were informed and aware that Plaintiff had skin cancer, multiple herniated disks in his back, PTSD, and was depressed. (Ex. 18 at 3:15-24; 28:2-4.)

that Plaintiff began to resist.

In light of the above, the Court concludes that Defendants' actions, as alleged, were unreasonable, and thus Plaintiff has pled enough facts to state a claim of excessive force. Accordingly, Defendants' motion to dismiss is **DENIED**.

### 2. Defendants Are Entitled to Qualified Immunity

The United States Supreme Court has created a qualified immunity for public officers who are defendants in actions. *Venegas v. Cnty. of Los Angeles*, 153 Cal. App. 4th 1230, 1241–42 (2007). In *Saucier v. Katz*, the court established a two-step procedure for determining whether a defendant's conduct was entitled to qualified immunity. 533 U.S. 194 (2001). First, "[t]aken in the light most favorable to the party asserting the injury, do the facts show the officer's conduct violated a constitutional right." *Id.* at 201. "If no constitutional right would have been violated were the allegations established," then the qualified immunity inquiry ends. *Id.* However, "if a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad, general proposition . . . ." *Id.*

*Saucier* was later receded from by *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), which concluded that the *Saucier* sequence should no longer be regarded as mandatory. Thus, judges of district courts and the courts of appeal should be permitted to exercise their "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. Accordingly, the Court chooses to apply the second prong of *Saucier* i.e. whether the right was clearly established at the outset of its analysis.

In determining whether a government official's conduct violates clearly established law, the test is whether, "at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Sjurset v. Button*, 810 F.3d 609, 616 (9th Cir. 2015). Though courts do not require a case "directly on point, [] existing precedent must have placed the statutory

or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 739 (2011) (citation omitted). Moreover, the Supreme Court has "repeatedly told courts–and the Ninth Circuit in particular . . . not to define clearly established law at a high level of generality." *Id.* at 741. (citation omitted).

Under the framework set forth above, the Court must now determine whether on March 2, 2015, the law was clearly established so that Defendants would have understood that the use of a Taser in their situation was a constitutional violation. As currently pled, the Court first notes that there are no cases that categorically deem the use of a Taser as either an excessive or acceptable force with facts parallel to the claim presented here.

However, on the other hand, case law is clear that the use of a Taser by an arresting officer does not violate the Fourth Amendment rights of a person who is actively resisting arrest, or refusing to obey police officers' commands. *See Draper v. Reynolds*, 369 F.3d 1270 (11th Cir. 2004) (holding that the use of a Taser on plaintiff who failed to comply with the officer's requests to produce certain documents did not violate plaintiff's constitutional rights); *see also Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (holding that the use of a Taser on plaintiff who declined officers' request to speak to him and subsequently shoved an officer out of the way did not violate the law); *Carter v. City of Carlsbad*, 799 F. Supp. 2d 1147 (S.D. Cal. 2011) (holding that use of a Taser against a large, belligerent, drunken ex-marine who "took an offensive fighting stance" may have been excessive, but did not violate clearly established law in 2009); *Sanders v. City of Dothan*, 671 F. Supp. 2d 1263 (M.D. Ala. 2009) (holding that the officer who tased a detained, but uncooperative suspect using drive-stun mode did not violate clearly established law as of 2005). Thus, as of 1993, and as early as 2011 in the Ninth Circuit, officers in situations similar to Defendants were granted qualified immunity when they used Tasers on persons who were uncooperative and resisting arrest. Thus, in the present matter, when Plaintiff physically struggled with Defendants, and continually refused their requests to return to the V.A Hospital, a reasonable officer in Defendants' situation would have believed that tasing Plaintiff did not violate clearly established law.

Plaintiff points to a Ninth Circuit decision, *Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003) to argue that Defendants' actions were a clear constitutional violation. (Doc. No. 53 at 8-9.) In *Drummond*, a neighbor called the police as he was afraid that plaintiff, who had a history of mental illness, would hurt himself by darting out into traffic. *Id.* at 1054. Four officers responded to the call and found plaintiff unarmed, hallucinating, and in an agitated state. *Id.* Before the ambulance arrived, one of the officers chose to restrain plaintiff by handcuffing him, knocking him to the ground, and placing his knees on plaintiff's body, all without warning. *Id.* Ultimately, the court found that the officers had fair warning that the force they used was excessive and amounted to a constitutional violation. *Id.* at 1062.

Defendants' actions in the present case are distinguishable from *Drummond*. Here, Plaintiff was accused of domestic violence by one of his daughters, was agitated, distressed, and expressing ideations of suicide to Defendants. Moreover, agreeing with Defendants that they had probable cause to put him on a 5150 hold[9], (Doc. No. 45-2 at 3), Plaintiff resisted being detained, refused Defendants' commands, and struggled with both Defendants when they tried to restrain him. Furthermore, unlike *Drummond*, Plaintiff was provided a warning before he was tased.[10] (*Id.* at 8.)

In light of these distinctions, *Drummond* falls short of establishing that reasonable officers in Defendants' situation would have understood that tasering Plaintiff was unlawful. Nor does the Court find the current matter to be such an "obvious case" that establishing a violation of the *Graham* factors by themselves could demonstrate that a

---

[9] Under section 5150, an officer may detain any person the officer determines, "as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled." Cal. Welf. & Inst. Code § 5150.

[10] The Court notes that as qualified immunity is an affirmative defense the defendant bears the burden of pleading it in the first instance. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002). The burden then shifts to the plaintiff, who must show that the official violated a right so clearly established "that every reasonable official would have understood that what he [was] doing violate[d] that right." *al-Kidd*, 131 S. Ct. at 2083. As currently pled, Plaintiff has failed to satisfy his burden.

clearly established law had been infringed upon.[11] Accordingly, based on the dearth of prior authority that mimics the present action, as well as case law that could have put Defendants in a position to believe that tasering Plaintiff did not violate Plaintiff's constitutional rights, the Court concludes that the use of the Taser in the circumstances Defendants confronted was not clearly established. Thus, Defendants are entitled to qualified immunity.

## CONCLUSION

Based on the foregoing, the Court **DENIES** Defendants' motion to dismiss Plaintiff's excessive force claims, **GRANTS** Defendants' request for qualified immunity, (Doc. No. 45), **GRANTS** Defendants' unopposed motion to file documents under seal, (Doc. No. 46), and **GRANTS** Defendant City of San Diego's motion to be **DISMISSED** from this lawsuit **WITH PREJUDICE**. (Doc. No. 51). Accordingly, the Clerk of Court is directed to close this case.

**IT IS SO ORDERED**.

Dated:  March 23, 2017

Hon. Anthony J. Battaglia
United States District Judge

---

[11] In Casey *v. City of Fed. Heights*, 509 F.3d 1278, 1286 (10th Cir. 2007) the court noted that "an officer's violation of the *Graham* reasonableness test is a violation of clearly established law if there are no 'substantial grounds for a reasonable officer to conclude that there was legitimate justification' for acting as [he] did." However, *White v. Pauly*, 137 S. Ct. 548, 552 (2017) asserts that a violation of *Graham* does not by itself create clearly established law outside "an obvious case." This exception for an "obvious case" remains good law, however, the Supreme Court recently clarified that the bar for finding such obviousness is quite high. *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011).